UNITED STATES DISTRICT COURT

Northern District of California

| | |
|---|---|
| FRED DOYLE HARDEN, | No. C 10-4155 MEJ |
| Plaintiff, | |
| v. | **ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DKT. NO. 55)** |
| CITY OF CLAYTON, et al., | |
| Defendants. | |

## I. INTRODUCTION

In this lawsuit, Plaintiff Fred Doyle Harden asserts that Defendants City of Clayton, Clayton Police Department (CPD) Chief of Police Dan Lawrence, CPD Sergeant Shelly Crain, CPD Officer Rich Enea, and State of California Department of Justice (DOJ) employee Terry Elm violated his constitutional rights.[1] First Amended Complaint (FAC), Dkt. No. 39. Defendants have now moved for summary judgment, arguing that Harden's claims fail as a matter of law. Dkt. No. 55. Harden has filed an Opposition to this Motion, to which Defendants have filed a Reply. Dkt. Nos. 65 and 71. Having carefully considered the papers submitted by the parties and the arguments of counsel, the Court hereby GRANTS Defendants' Motion for Summary Judgment for the reasons explained below.[2]

## II. BACKGROUND

---

[1] On May 11, 2012, after Harden and Elm agreed to a mediated settlement, this Court granted the parties' stipulation to dismiss Elm from this action. Dkt. No. 53.

[2] Harden failed to timely oppose Defendants' Motion, but, as the Court explained in its Order Discharging Fourth Order to Show Cause, it considers Harden's Opposition and decides this matter on the merits. Dkt. No. 69. The parties also failed to meet and confer for the purpose of submitting a joint statement of undisputed facts before Defendants' Motion was filed. Dkt. No. 59. Accordingly, the Court ordered Harden to meet and confer with opposing counsel and file a joint statement along with his Opposition. Dkt. No. 60. The joint statement, however, only contains ten agreed upon facts; consequently, the Court's background section below cites to the evidence submitted by both parties in connection with their briefs.

In 1997, Harden was arrested and convicted — pursuant to a plea agreement — for violating California Penal Code § 647(a), solicitation of a lewd act. Declaration of Noah G. Blechman (Blechman Decl.), Dkt. No. 58, Ex. C at 6. At the time of his plea agreement, Harden believed that he would only be required to register as a sex offender while serving his three-year probation sentence. Declaration of J. Michael Brown (Brown Decl.), Dkt. No. 67, Ex. 1 at 2. After Harden learned that the sex offender registration was a lifetime requirement, he initiated legal proceedings to withdraw his plea. *See id.* While this process was pending, Harden properly registered as a sex offender from 1997 to 2007, albeit with some minor and immaterial exceptions.[3] Blechman Decl., Ex. D. at ¶ 6.

In January 2008, Harden's motion to vacate his 1997 plea was granted. Blechman Decl., Ex. H. Harden's criminal defense attorney, Joseph Tully, wrote a letter on March 25, 2008 to Lynn Christ of the CPD,[4] following a telephone conversation between the two of them. *Id.* In the letter, Tully informed the CPD that Harden's conviction was vacated (a certified copy of the court's minute order reflecting this was attached), and that Harden was therefore no longer required to register as a sex offender. *Id.* Christ testified that she believes she received this letter, but she does not know what happened to it afterwards.[5] Blechman Decl., Ex. J at 75. Both Crain and Enea have testified that they never saw or knew about Tully's letter until Harden filed this lawsuit. Blechman Decl., Ex. D at ¶ 22; Ex. I at ¶ 10.

Tully also left a voice-mail message with the Concord Police Department on April 4, 2008, advising it that Harden no longer needed to register as a sex offender. Blechman Decl., Ex. G at 56-

---

[3] Pursuant to California Penal Code § 290, sexual offenders are required to register with their local police department within five days of their birthday and/or within five days of moving. Harden's birthday is April 1, 1951. Blechman Decl., Ex F. at 13.

[4] Christ is not a defendant in this lawsuit.

[5] Before her deposition, Christ searched the CPD's records with respect to Harden and did not find the letter at issue. Blechman Decl., Ex. J at 81. Even though she has no idea what happened to the letter, Christ explained that her normal procedure when receiving such a letter would have been to date-stamp it and then forward it to Crain. Brown Decl., Ex 8 at 78.

2

59. The Concord Police Department's Records Supervisor e-mailed Tully to inform him that: (1) the DOJ, rather than the local police department, must be notified about a sex offender's registration status;[6] (2) the DOJ's database provides that no documentation has been received showing that Harden is no longer required to register; and (3) the DOJ "advised me that <u>you should have your client register for the current year</u>." Blechman Decl., Ex. M (emphasis in original).[7] On April 14, 2008, Tully sent a letter to the DOJ asking it to amend its records because "as the attached copy of the certified Minute Order shows, Mr. Harden's plea, and therefore his conviction, was vacated . . . ." Blechman Decl., Ex. N.

Harden did not register as a sex offender with the CPD in 2008. Blechman Decl., Ex. F at 47-48. In September of that year, Crain, without any explanation, told Enea to investigate Harden's registration status. Blechman Decl., Ex. D at ¶ 2. As part of his investigation, Enea: (1) confirmed that Harden still lived in Clayton; (2) reviewed Harden's criminal history, which included his 1997 conviction along with the registration requirement; (3) noted that Harden usually registered annually around April, but had not done so in 2008; (4) checked the California Law Enforcement Telecommunication System, which provided that Harden was still required to register as a sex offender; and (5) called Elm from the DOJ, who informed him that its SOTP database showed that Harden had "correspondence" in his file, but was still required to register as of September 2, 2008.[8]

---

[6] The DOJ maintains the official database of registered sex offenders, which is called the Sexual Offender Tracking Program (SOTP). Blechman Decl., Ex. B at 1-2. The DOJ only amends SOTP records when it receives official records from courts or law enforcement agencies. *Id.* at ¶ 19.

[7] Defendants request that the Court take judicial notice of the following exhibits attached to the Blechman Declaration: A, E, M, N, O, and P. Dkt. No. 56. Harden does not object to this request. The Court finds that these exhibits are public records and proper for judicial notice pursuant to Federal Rule of Evidence 201. Accordingly, Defendants' request is GRANTED.

[8] Harden's SOTP registration did not officially change until the DOJ received a February 3, 2009 certified minute order from Contra Costa County Superior Court indicating that Harden's criminal charges were dismissed. Blechman Decl., Ex. B at 1-2. On March 24, 2009, the DOJ sent a letter to Tully informing him that Harden was no longer required to register as a sex offender. *Id.* at ¶ 27.

*Id.* at 1-3. Enea detailed this entire investigation in a police report, concluding that Harden should be

charged for failing to register and referring the matter to the Contra Costa County District Attorney. Blechman Decl., Ex. E. Crain reviewed and approved Enea's police report and recommendation. Blechman Decl., Ex. D at ¶ 16.

Pursuant to Enea's report, the District Attorney filed a misdemeanor complaint against Harden and an arrest warrant was issued by the Contra Costa County Superior Court.[9] Blechman Decl., Ex. O. Six days later, Harden was arrested at his residence by Enea and other officers. Blechman Decl., Ex. D at ¶ 22. During the arrest, the CPD ignored Harden's claims that he was no longer required to register as a sex offender and had "documentation" to prove it. Brown Decl., Ex. 33 at 74.[10] Harden spent the night in jail and was released on his own recognizance the following morning. Blechman Decl., Ex. C at 8-9.

Based on the foregoing events, Harden initiated this action on September 16, 2010. Compl., Dkt. No. 1. On June 30, 2011, Harden filed his FAC, asserting only one claim for the violation of his civil rights. Dkt. No. 39. Defendants' Motion for Summary Judgment attacks this claim and thus moves to dismiss the entire action. Dkt. No. 55.

### III. LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate only when there is no genuine dispute of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The moving party bears both the initial burden of production as well as the ultimate burden of persuasion to demonstrate that no genuine dispute of material fact remains. *Nissan Fire & Marine Ins. Co., Ltd. v.*

---

[9] The complaint erroneously listed the charge against Harden as failing to register a change of residence around June 2007. Blechman Decl., Ex. O.

[10] Defendants' evidentiary objections to this testimony from Harden are DENIED. Dkt. No. 73. The testimony is relevant because it shows that Harden notified the CPD that he believed his arrest was unlawful while it was taking place. The testimony is not hearsay because Harden is not attempting to introduce the "documentation" or any other statements other than his own. Because the Court's Order is not based on the merits of any other evidence objected to by the parties, the Court does not consider or rule on those objections.

4

*Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once the moving party meets its initial burden, the nonmoving party is required "to go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotations and citations omitted). On summary judgment, courts are required to view the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If a reasonable jury could return a verdict in favor of the nonmoving party, summary judgment is inappropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## IV. DISCUSSION

Harden's FAC titles his only claim against Defendants as a "violation of civil rights" and cites both 42 U.S.C. § 1983 (Section 1983) and 42 U.S.C. § 1985 (Section 1985) in the caption. Because the FAC does not clearly delineate what specific "civil rights" claims Harden is asserting against Defendants, their Motion for Summary Judgment attacks each possible claim being alleged. The Court analyzes these arguments in turn below.

**A. Section 1985 Claim**

Defendants first argue that to the extent that Harden is asserting a Section 1985 conspiracy claim, that claim should be dismissed as a matter of law. Besides noting Section 1985 in the title of his claim, Harden's FAC does not mention Section 1985 in its allegations nor does it delineate which section of the statute Harden is moving under.[11] Moreover, Harden did not mention Section 1985 in his Opposition or during oral argument. The Court therefore finds that Harden has not presented any evidence to support a Section 1985 claim, and Defendants' Motion on this issue is GRANTED. *See Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) ("As other courts have noted, it is not our task, or that of the district court, to scour the record in search of a genuine issue of

---

[11] Rather, the allegations in the FAC only allege a Section 1983 claim against Defendants. FAC at ¶ 28 ("This cause of action arises under the United States Civil Rights Act, 42 U.S.C. § 1983 et seq., as hereinafter more fully appears.").

5

triable fact. We rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment.") (internal quotations and citation omitted)).

**B. Section 1983 *Monell* Claim Against the City and Lawrence**

Defendants next contend that Harden cannot present any evidence to support his Section 1983 claim against the City and Lawrence. To prevail under Section 1983, a plaintiff must show "(1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States." *Leer v. Murphy*, 844 F.2d 628, 632-33 (9th Cir. 1988). Pursuant to *Monell v. Department of Social Services of City of New York*, a "local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." 436 U.S. 658, 694 (1978). Rather, to establish Section 1983 municipal liability, a plaintiff must prove that (1) he was deprived of a constitutional right; (2) the municipality had a custom or policy; (3) that amounted to a deliberate indifference to the plaintiff's constitutional right; and (4) the policy was the moving force behind the constitutional violation. *East v. City of Richmond*, 2010 WL 4580112, at *3 (N.D. Cal. Nov. 3, 2010). Municipal liability may be based on (1) an express municipal policy, such as an ordinance, regulation, or policy statement; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) the decision of a person with final policymaking authority ratifying a subordinate's unconstitutional decision or action and the basis for it. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123-27 (1988).

Defendants' Motion on Harden's *Monell* claim is also GRANTED. As explained further in the next section, Harden cannot establish that any of his constitutional rights were violated, which is a prerequisite to any *Monell* claim. Even if he could, the claim would still fail as a matter of law. Harden's FAC does not identify any custom or policy — or any other theory — that would attach liability to the City or Lawrence's conduct. In his Opposition, Harden only devotes one paragraph in support of his *Monell* claim. He argues that Lawrence testified that both Crain and Enea "were following department procedures" when they did not conduct a further investigation about the

"correspondence" in the DOJ's file on Harden, and when Enea refused to allow Harden, during his arrest, to provide "documentation" that his conviction had been vacated. Dkt. No. 65 at 17-18. Harden summarily concludes that the "liability of the City of Clayton is based upon the fact that the city's [sic] procedures were what caused this unlawful arrest to happen." *Id.* But such conclusory statements providing that officers were following "department procedures" on a single occasion are not sufficient to show that the City had an express policy or widespread practice that was a moving force behind a constitutional violation.

To the extent that Harden argues that the City is liable under *Monell* because Lawrence was a person with final policymaking authority who ratified Crain and Enea's acts and the basis for them, that argument is misplaced. To prevail under such a ratification theory, a plaintiff is required to prove that a person with final policymaking authority knew about a subordinate's ongoing constitutional violations and approved of those violations. *Christie v. Iopa*, 176 F.3d 1231, 1239-40 (9th Cir. 1999). In other words, there must be "evidence of a conscious, affirmative choice" on the part of the final policymaker to condone the acts. *Gillette v. Delmore*, 979 F.2d 1342, 1347 (9th Cir. 1992). "For example, it is well-settled that a policymaker's mere refusal to overrule a subordinate's completed act does not constitute approval." *Christie*, 176 F.3d at 1239. Here, Harden does not present any evidence that Lawrence — who was not involved in any capacity with the investigation or arrest of Harden — actually made a "conscious, affirmative choice" to condone Crane or Enea's conduct at the time it was taking place. Based on the reasons above, Harden has failed to establish any *Monell* claim against the City or Lawrence and this claim is DISMISSED.

**C. Section 1983 Claim Against Crain and Enea**

Lastly, Defendants attack the crux of Harden's FAC: the Section 1983 claim against Crain and Enea. Defendants contend that both officers cannot be liable for violating any of Harden's constitutional rights, and, even if the Court were to find a genuine dispute on this issue, the officers are entitled to qualified immunity. In his Opposition, Harden responds to these arguments and attempts to attach Section 1983 liability to both Crain and Enea.

1. <u>Sergeant Crain</u>

With respect to Crain, Harden contends that she is liable under Section 1983 for procuring the warrant against him by deceiving the judge who issued it. Such a judicial deception claim is permitted under the Fourth Amendment. To prevail, a plaintiff "must (1) establish that the warrant affidavit contained misrepresentations or omissions material to the finding of probable cause, and (2) make a substantial showing that the misrepresentations or omissions were made intentionally or with reckless disregard for the truth." *Bravo v. City of Santa Maria*, 665 F.3d 1076, 1083 (9th Cir. 2011) (internal quotations omitted); *Ewing v. City of Stockton*, 588 F.3d 1218, 1223-24 (9th Cir. 2009). If a plaintiff cannot satisfy either of the above prongs, the court does not need to go any further and should grant summary judgment on the claim in favor of the defendant. *See Liston v. Cnty. of Riverside*, 120 F.3d 965, 973 fn. 8 (9th Cir. 1997) (holding that the qualified immunity analysis is encompassed within the two prongs of the judicial deception test, and therefore "[t]hat additional step in the district court's qualified immunity analysis was unnecessary and, more to the point, incorrect in light of our holding in *Branch* that, where probable cause is otherwise lacking, an officer who obtains a warrant by recklessly or intentionally including false statements (or omitting material facts) cannot be said to have acted in a reasonable manner and the shield of qualified immunity is lost.") (internal quotations and citations omitted)). Courts have stressed that judicial deception claims must be based on intentional lying or a reckless disregard for the truth, and that "[o]missions or misstatements resulting from negligence or good faith mistakes will not invalidate an affidavit which on its face establishes probable cause." *See, e.g.*, *Ewing*, 588 F.3d at 1223-24 (citing *United States v. Smith*, 588 F.2d 737, 740 (9th Cir. 1978)).

Because the Court is free to examine either of the above prongs first, it begins its analysis with whether Harden has made a "substantial showing" that Crain intentionally or with reckless disregard for the truth omitted material facts from the warrant. Harden argues that she did because she received Tully's letter explaining that Harden's conviction had been vacated, and yet she failed to provide this information in the application for the warrant. Dkt. No. 65 at 14 ("Accepting as true the inference that Crain did receive Mr. Tully's letter then the omission from the declaration in support of the application for the arrest warrant was not mere negligence it was at worst deliberate

8

1 deception and at best for Crain reckless indifference."). But, for this argument to be valid, the
2 record before the Court must support that Crain actually received or knew about the letter before
3 Harden's arrest. Harden contends that this is the case since "the evidence shows that the letter from
4 Mr. Tully with the certified copy of the court order granting the motion to withdraw the plea was in
5 fact given to Crain." *Id.* at 10. Harden bases this statement on his interpretation of Christ's
6 testimony, which he affirmatively summarizes as follows: "Ms. Christ [] gave the letter to
7 Administrative Sergeant Shelly Crain." Dkt. No. 65 at 3 (citing Brown Decl., Ex. 8 at 78).

8       This citation, however, does not support Harden's position. Christ's actual testimony was:
9 "*If* I received this letter in the mail, I *would* have date-stamped it and forwarded it to the
10 administrative sergeant." Brown Decl., Ex. 8 at 78 (emphasis added). Thus, Christ was only
11 explaining that her normal procedure would have been to forward letters such as Tully's to Crain —
12 which is not the same as stating that she actually gave the letter to Crain. Christ could not testify to
13 the latter because, as she clarified during her deposition, even though she believes she received the
14 letter, she has no idea what happened to it subsequently. Blechman Decl., Ex. J at 75, 77. Most
15 importantly, Crain has testified that she had no knowledge about the letter prior to the filing of this
16 lawsuit. Blechman Decl., Ex. I at ¶ 10.[12]

17       The Court's evaluation of the record above, in which all evidence and inferences are viewed
18 in a light most favorable to Harden, only supports a finding that Christ received the letter. To jump
19 to the conclusion that Crain also received the letter is just too far of a stretch, especially considering

---

[12] In his Opposition, Harden provides that "[a]lthough Crain claimed not to remember the letter even she testified it may have been put in her mailbox." Dkt. No. 65 at 10. Harden, however, provides no citation to the record to support this fact. Later in his Opposition, Harden returns to this issue and provides that Crain testified as follows about the letter: "*If* I was on duty that day, it *may* have come to me. It *may* have been put in my mailbox." *Id.* at 14 (emphasis added). Here, Harden does provide a citation to Crain's deposition testimony, but he has not included the deposition transcript for this testimony as part of his declaration and it is therefore not in the record. Moreover, even if this testimony was in the record, it would not change the Court's analysis. This testimony does not support that Crain knew about the letter. Rather, it only shows that when asked a hypothetical question, Crain testified that she believes that if she would have been working that day, the letter may have been placed in her mailbox.

9

1 that Crain has disavowed any pre-suit knowledge about the letter and the only evidence against this
2 is Christ's belief that she may have forwarded the letter to Crain.  Thus, the Court finds that Harden
3 has not made a "substantial showing" that Crain's omission regarding the letter meets the standard
4 set out by the Ninth Circuit in *Bravo* and *Ewing*.  He has not presented any evidence which shows
5 that Crain intentionally withheld information about Harden's vacated conviction from the warrant
6 application, which would not be possible since Crain did not know about the letter at that time.  For
7 the same reasons, he has not presented any evidence that Crain's omission constituted a reckless
8 disregard for the truth.

9       Harden's argument that this case is analogous to the Ninth Circuit's ruling in *Liston* is also
10 not persuasive.  In *Liston*, the defendant officer obtained a search warrant for the plaintiffs' home
11 based on his affidavit that an individual involved in methamphetamine manufacturing and
12 distribution lived there.  120 F.3d 965 at 968-69.  Before applying for the warrant, the defendant
13 officer drove by the residence at issue and observed that there was a "For Sale" sign in the front yard
14 (which the plaintiffs claimed also included a "Sold" sign, indicating that a sale had recently been
15 completed).  *Id.* at 974-75.  The defendant officer, however, did not include this information about
16 the "For Sale/Sold" sign in the warrant application.  *Id.*  When officers executed the search warrant
17 on the plaintiffs' residence, they learned that the targeted suspect of the raid no longer lived there
18 since the house was sold three days earlier.  *Id.* at 968.  *Liston* overturned the district court's
19 decision to grant summary judgment for the defendant officer and held that he was liable for judicial
20 deception because his omission of the "For Sale/Sold" sign from the warrant application was
21 material and a reckless disregard of the truth.  *Id.* at 975.

22       But, contrary to Harden's argument, this matter is distinguishable from *Liston*.  The
23 defendant officer in *Liston* admitted that he saw the "For Sale" sign and chose not to include this
24 information in his affidavit.  Here, there is no evidence that Crain knew about the letter explaining
25 that Harden's conviction was vacated.  Without such evidence, the Court cannot find that Harden
26 has made a "substantial showing" that Crain intentionally omitted the contents of the letter from the
27 warrant application or did this with a reckless disregard for the truth.  Accordingly, Harden has not
28

10

met his burden with respect to the second prong of a judicial deception claim. Because this finding is dispositive towards the entire claim against Crain, the Court does not examine the first prong and GRANTS Defendant's Motion on this issue.

At one point of his Opposition, Harden notes that "Crain's liability is not merely supervisorial. Crain actively participated in the concealment of known facts []." Dkt. No. 65 at 15. To the extent that Harden is alleging a Section 1983 supervisory liability claim against Crain, that claim is DISMISSED. Harden's FAC did not assert a claim against Crain based on her role as a supervisor (unlike his claim against Lawrence). FAC at ¶ 5. Moreover, his Opposition does not provide any argument or evidence in support of such a claim. As the Court previously noted, it is the nonmoving party's duty to identify with reasonable particularity the evidence that precludes summary judgment, and Harden has failed to do so here. *See Keenan*, 91 F.3d at 1279. For similar reasons, if Harden is asserting a claim based on the premise that Crain should have done a better job investigating his registration status before applying for an arrest warrant, that claim is also DISMISSED. Harden's Opposition only sets out a claim for judicial deception, and he fails to present any argument or evidence to establish that Crain committed a constitutional violation by not conducting a better investigation. *See* Dkt. No. 65 at 9 (the only section of Harden's Opposition dedicated to establishing a constitutional violation against Crain and Enea is titled (in all capital letters): "Plaintiff's constitutional rights were violated because Plaintiff was arrested without probable cause on a warrant that was invalid because material information was intentionally withheld from the issuing magistrate.").

2. Officer Enea

With respect to Enea, Harden appears to also contend that Enea should be liable under the Fourth Amendment for judicial deception. Harden's approach to supporting this theory of liability, however, is misplaced. As discussed above, for Harden to withstand summary judgment on a judicial deception claim, he must establish the following: (1) the warrant application contained material misrepresentations or omissions (2) that were made intentionally or with reckless disregard for the truth. *Bravo*, 665 F.3d at 1083. In his Opposition, Harden does not devote any argument to

11

1 provide that Enea's conduct satisfies the above test (something that would be hard to do considering
2 there is no evidence that Enea ever knew about the letter and therefore could not omit such
3 information from his affidavit). Nor does Harden attempt to establish that Enea committed any
4 another constitutional violation. Instead, Harden's argument is entirely devoted to refuting
5 Defendants' position that Enea is entitled to qualified immunity. *See* Dkt. No. 65 at 15-17. This is
6 improper and alone warrants the granting of summary judgment on this claim in favor of
7 Defendants.

8 Moreover, when evaluating Harden's arguments that Enea is not entitled to qualified
9 immunity, the Court finds that these arguments are not persuasive and do not preclude summary
10 judgment.[13] First, Harden contends that "[w]hen Enea stopped his investigation without making
11 further inquiry about the 'correspondence' his stopping was unreasonable." Dkt. No. 65 at 15.
12 Essentially, Harden claims that every reasonable officer in Enea's position would have followed up
13 and continued to investigate Harden's registration status after Elm provided that there was a letter in
14 his DOJ file.

15 The Court disagrees. After Enea was assigned to determine whether Harden properly
16 registered as a sex offender in 2008, he conducted a comprehensive investigation by: (1) confirming
17 that Harden still lived in Clayton; (2) reviewing Harden's criminal history (which included his 1997
18 conviction that required him to register); (3) noting that Harden usually registered annually around
19 April, but had failed to do so in 2008; (4) checking the California Law Enforcement
20 Telecommunication System, which provided that Harden was still required to register as a sex
21 offender; and (5) calling Elm from the DOJ, who informed Enea about the "correspondence" but

---

[13] "Qualified immunity shields government officials from liability provided that 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Reza v. Pearce*, 2011 WL 5024265, at *1 (D. Ariz. Oct. 21, 2011) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). In determining whether qualified immunity applies, the Court must consider (1) whether the alleged facts "make out a violation of a constitutional right," and (2) if so, whether the right "was 'clearly established' at the time of defendant's alleged misconduct." *Pearson*, 555 U.S. at 232. The Court may consider these two steps in any order. *Id.* at 236.

confirmed that Harden was still required to register. Blechman Decl., Ex. D at 1-3. Enea did not attempt to omit this last part of the investigation from his affidavit, and specifically included the following in his offense report: "After looking at Harden's file, Elm told me that there was a correspondence in Harden's file, but as of today he is still required to register . . . ." Blechman Decl., Ex. E. Based on this record, the Court cannot find that Enea's investigation was plainly incompetent or that he knowingly violated the law. *See Messerschmidt v. Millender*, 132 S.Ct. 1235, 1244-45 (2012) ("Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law.") (internal quotations and citations omitted)).

Harden's second argument against qualified immunity for Enea is even more attenuated. Harden contends that when Enea was executing the arrest warrant, he should have stopped and entertained Harden's pleas that there must have been a mistake since his conviction had been vacated. Dkt. No. 65 at 16 ("when Enea detained Mr. Harden after Mr. Harden offered to prove that he was no longer convicted and therefore no longer required to register by offering to provide the letter from Mr. Tully and the court order, the detention was unreasonable"). The unreasonability of such an approach does not warrant much discussion. If all police officers were required during an arrest — which they were mandated to execute by a court — to investigate the merits of the warrant and permit the detainee to provide "documentation" or other proof to contest the charges, the structure of the criminal justice system (i.e., courts issuing warrants and then police officers, whether they were involved in the investigation or not, executing those warrants) would deteriorate. Here, Enea encountered a typical situation that likely occurs on a daily basis where the detainee (Harden) claimed to the police officers that the warrant was invalid and that he did not do anything wrong. This claim of innocence, however, is a decision for the court to evaluate, and consequently Enea's conduct in executing the arrest warrant on Harden was not plainly incompetent or in knowing violation of the law. *See Messerschmidt*, 132 S.Ct. at 1244-45. Accordingly, Defendants' Motion is GRANTED and Harden's claims against Enea are DISMISSED.

### V. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is GRANTED in its entirety.

**IT IS SO ORDERED.**

Dated: October 5, 2012

_____
Maria-Elena James
Chief United States Magistrate Judge